**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN M. TODD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 10 C 4673 |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| CAROLYN COLVIN[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Kevin Todd, seeks an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, arguing that the Commissioner's position in denying her application for Disability Insurance Benefits was not substantially justified. He asks for an award of $12,535.30 for about 68 hours of work.

The EAJA provides that a district court may award attorney's fees where (1) the plaintiff is a "prevailing party"; (2) the government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A), (B); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Costs are available under 28 U.S.C. § 2412(a)(1). Here, by virtue of the remand of his case, the plaintiff is the prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). There are no "special circumstances" alleged. *See Golembiewski*, 382 F.3d at 724; *United States v. Hallmark Const. Co.*, 200 F.3d 1076,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Carolyn W. Colvin for Michael J. Astrue as the appellee.

1079 (7th Cir. 2000). The plaintiff's application was timely filed and is supported by an itemized statement. As to the final point – whether the government's position was substantially justified – the Commissioner bears the burden of proof. *Scarborough v. Principi* 541 U.S. 401, 416 (2004); *Golembiewski*, 382 F.3d at 724.

In this case, the medical evidence demonstrated that Mr. Todd drank heavily, every day, for years until he finally had to be hospitalized for treatment. There wasn't a great deal of medical evidence. He did have mild to moderate degenerative disc disease. His main problems seemed to be with his hands and feet – trouble making a fist and numbness in his fingers and toes. Still, when his grip strength was tested, it generally ranged from 4/5 to 5/5. Motor strength in the extremities was normal and

Two treating physicians, however, found him to be severely restricted. Dr. Joyce noted that x-rays showed only mild deformities in Mr. Todd's first and second fingers and an EMG showed neuropathy in his right wrist. Dr. Joyce said Mr. Todd had lost half his ability to grasp, turn, and twist objects, and 90% of his ability to perform fine manipulation. Dr. Schmid, who had performed a CT scan of Mr. Todd's liver, found that he could sit for just one hour at a time and stand for just 20 minutes at a time. In an eight-hour workday, Mr. Todd could sit for a total of four hours and stand or walk for a total of two, leaving two hours unaccounted for. He could lift no more than 20pounds, but could manage that only rarely.

This case turned on the ALJ's rejection of two physician's opinions – or, at least, the manner in which he rejected them. The ALJ offered what is considered a valid reason for doing so: the doctors did not provide any notes to support their opinions. *See* 20 CFR §1527(d)(2); *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009); *Skarbek v.*

2

*Bowen*, 390 F.3d 500, 503 (7th Cir. 2004). All they did, in fact, was check some boxes and fill in a couple of blanks on a form. As was noted in the opinion in this case:

> Standing alone, the forms from Dr. Joyce and Dr. Schmid are all but useless. They are utterly devoid of *any* signs, findings, or explanations.

*Todd v. Astrue*, 2012 WL 3096681, 7 (N.D.Ill. 2012). But, as the opinion also noted, they did not stand alone.

Dr. Joyce submitted treatment notes, x-ray evidence, and EMG results. Dr. Schmid submitted treatment notes as well. The ALJ didn't mention either physicians' notes. One could not tell from his opinion whether he saw them or ignored them. The case was remanded because ALJs cannot ignore lines of evidence like this. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). And so, according to the Seventh Circuit, the ALJ's error was worse than a "run-of-the-mill error in articulation; the type of error that makes the Commissioner's position substantially unjustified. *See Bassett v. Astrue,* 641 F.3d 857, 860 (7th Cir.2011); *Britton-Dillon v. Astrue*, 433 Fed.Appx. 474, 476 (7th Cir. 2011).

The Commissioner committed another *faux pas* that the Seventh Circuit has repeatedly found inexcusable. In his brief, employing the Dictionary of Occupational Titles, he explained that even if the ALJ had credited Dr. Joyce's limitations in hand use, it would have been consistent with the ALJ's finding that Mr. Todd could perform fine manipulations occasionally. The problem was, the ALJ didn't offer that reasoning. And, so, the Commissioner violated the *Chenery* doctrine. It's a tactic the Seventh Circuit has called "sanctionabl[e]," *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013). The court has also indicated that it' a tactic that renders the Commissioner's position substantially unjustified. *Bassett*, 641 F.3d at 860 (defense of the ALJ's opinion on a forbidden basis

3

is not substantially justified); *Golembiewski v. Barnhart,* 382 F.3d 721, 724 (7th Cir.2004)(same).

As suggested in the discussion of the evidence, this was a case where a remand may not have happened had the ALJ written a better opinion – perhaps employing some of the reasoning. There wasn't much evidence to support Mr. Todd's application other than the forms Dr. Joyce and Dr. Schmid filled out, and the ALJ might have validly discarded those opinions if he mentioned their notes and provided an adequate rationale.[2] But under the applicable law, the errors committed here render an award of fees appropriate.

A couple of questions remain, such as how much? Mr. Todd's attorney is seeking an hourly rate of $181.25. That's an enhancement over the statutory rate of $125 an hour, and Mr. Todd's counsel explains that that is due to inflation. The Commissioner argues that counsel has not demonstrated an entitlement to an enhancement, relying on *Mathews-Sheets v. Astrue*, 653 F.3d 560, 565 (7th Cir. 2011), where Judge Posner wrote that a party seeking an enhancement would "have to show that without a cost of living increase that would bring the fee award up to [$181.25] per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case." 653 F.3d at 565. That's obviously impossible, both practically and realistically. Practically, because it would require a survey of all the attorneys in the area. Realistically, because, in the current legal market, hundreds of those attorneys are

---

[2] On remand, Mr. Todd was found to be disabled as of March 12, 2009. [Dkt. # 41-2]. That was two years after the two doctors' opinions so, apparently, some later evidence was submitted to better substantiate Mr. Todd's claim.

4

looking for work. It would not have been terribly challenging to have found at least one would have handled this case for $125 an hour.

But this is an issue we have seen before – same attorney, same proof, same argument from the Commissioner, essentially focusing on a single sentence from *Mathews-Sheets*. We reject the Commissioner's position for reasons articulated at length in *Booker v. Colvin*, 2013 WL 2147544, 3 (N.D.Ill. 2013), which the Commissioner ignores. Counsel has adequately demonstrated his entitlement to an inflationary increase of the statutory rate. But his figures are off.

To arrive at his requested rate of 181.25, counsel relies on the Consumer Price Index. (*Plaintiff's Motion for Attorney's Fees,* Ex. 1). The CPI index for June 2011–which counsel uses as the basis for his requested rate-is 220.182. The indices for 1996–when the statutory rate was increased-range from a low of 154.6 in January to a high of 159.7 in December. Thus, the inflationary increases from 1996 to November 2009 range from 42.2% to 37.87%, which would support a fee enhancement from a high of about $177.75 to a low of about $172.25. From March 1996–when the rate increase went into effect-to November 2009, the inflationary increase was 40.87%, allowing for a cost-of-living enhancement to $176. Counsel has not supported the hourly rate he requests and it shall be reduced to $176 an hour.[3]

One more issue remains: to whom. The Commissioner argues that any fee award must be made payable to Mr. Todd, not his counsel. Counsel has submitted a copy of his fee agreement with the plaintiff in which he agreed that any EAJA fee award shall be

---

[3] This kind of inexact computation using the CPI also occurred in *Booker*, 2013 WL 2147544, 6. It would be helpful to the court if there were more careful computation prior to the submission of the fee petition.

5

payable directly to him. (*Plaintiff's Motion for Attorney's Fees,* Ex. 2). Nevertheless, the Commissioner argues that, under *Astrue v. Ratliff,* ––– U.S. ––––, 130 S.Ct. 2521, 177 (2010) – which held that the statutory fee entitlement belongs to the party rather than to the party's lawyer-the government is entitled to determine whether the plaintiff owes any debt to the government before any fee can be directed to counsel. *Ratliff* did indicate that if there was a fee assignment, the only ground for requiring any award go to the plaintiff is that the plaintiff owes a prior debt to the government, 130 S.Ct. at 2529; *Mathews–Sheets,* 653 F.3d at 565–66. We do not read *Ratliff* or *Mathews–Sheets* as requiring that yet another procedural layer be added to these cases. The Commissioner does not indicate that any debt is owed, but wants to put the proceedings on hold while she verifies whether Mr. Todd does owe the government any money. If the plaintiff owes a debt, the time to demonstrate as much is during the EAJA briefing, not well after. Accordingly, the fee award will be paid directly to plaintiff's counsel.

## CONCLUSION

The plaintiff's motion for attorneys' fees [# 35] is granted. Plaintiff's counsel's enhanced hourly rate shall be $176. Plaintiff shall submit an amended statement reflecting the new total amount and the government shall pay the resulting award directly to plaintiff's counsel.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 11/14/13